UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

CORY S.,[1]

      Petitioner,

vs.

KILOLO KIJAKAZI, Acting Commissioner
Of Social Security Administration,[2]

      Respondent.

Case No.  1:21-cv-00039-CWD

**MEMORANDUM DECISION
AND ORDER**

## INTRODUCTION

Petitioner Cory S. brings this action under the Social Security Act ("the Act), 42

U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of

Social Security (the "Commissioner").  The Commissioner denied Petitioner's

application for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI")

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Kilolo Kijakazi is substituted for Andrew Saul pursuant to Federal Rule of Civil Procedure 25(d).  Kijakazi became the Acting Commissioner of Social Security Administration on July 9, 2021.

**MEMORANDUM DECISION AND ORDER - 1**

under Title II of the Act. 42 U.S.C. § 401 *et seq.* For the following reasons, the decision of the Commissioner will be affirmed.

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have the power to enter … a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 907 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d. 625, 630 (9th Cir. 2007) (quotation omitted).

MEMORANDUM DECISION AND ORDER - 2

# BACKGROUND

## I.    Petitioner's Application

Petitioner alleges disability based on his rheumatoid arthritis, herniated disc, and depression.  AR 284.[3]  At the time of his alleged onset date, he was 37 years of age.  AR 22.  He has a high school education and past relevant work experience as a carpenter.  *Id.*

Petitioner protectively applied for Disability Insurance Benefits ("DIB") on December 11, 2017, alleging an onset date of December 11, 2017.  AR 13.  His application was denied initially on May 18, 2018, and on reconsideration on November 26, 2018.  *Id.*  Petitioner next requested a hearing, which was held on June 11, 2020, before Administrative Law Judge ("ALJ") Hallie E. Larsen.  AR 13, 23.  Petitioner appeared and testified at the hearing, represented by counsel; a vocational expert ("VE"), Bob Zadow also testified.  AR 30-54.  On June 26, 2020, the ALJ issued a decision denying Petitioner's claim.  AR 13-23.  Petitioner requested Appeals Council review, which was denied on December 11, 2020.  AR 1-9.  Petitioner sought review before this Court.[4]

## II.    Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability.  *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any

---

[3] Citations to "AR" are to the Administrative Record (Dkt. 11).
[4] The parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636. (Dkt. 6).

medically determinable physical or mental impairment which can be expected… to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At the step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 414.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical and mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges as severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disable; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the Commissioner must evaluation medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairment impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert,* 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## III.    The ALJ's Decision

At step one, the ALJ determined that Petitioner had not engaged in substantial gainful activity after his alleged onset date of December 11, 2017. AR 15. Therefore, the ALJ continued with the sequential process. *Id.*

At step two, the ALJ determined that Petitioner has the following severe impairments: "rheumatoid arthritis; obesity; degenerative disc disease of the lumbar spine; status-post fusion; degenerative joint disease of the bilateral hips." AR 15-17.

At step three, the ALJ determined that Petitioner's impairments did not meet or medically equal the severity of a listed impairment. AR 17-18. The ALJ then assessed Petitioner's residual functional capacity ("RFC"), finding that Petitioner

> has the residual functional capacity to perform less than a full range of sedentary work as defined in 20 CFR 404.1567(a). The claimant is able to lift and/or carry up to 10 pounds occasionally and less than 10 pounds frequently. He can sit throughout an 8-hour day with normal breaks and he can stand and/or walk about 2 hours in an 8-hour day with normal breaks. He can never climb ladders, ropes, scaffolds. He can occasionally climb stairs or ramps, balance as defined in the Selected Characteristics of Occupations, stoop, kneel, crouch or crawl. He can

**MEMORANDUM DECISION AND ORDER - 5**

tolerate only occasional exposure to work around hazards such as dangerous moving machinery and unprotected heights. He is able to frequently, not constantly, handle and finger.

AR 18.

At step four, the ALJ found that Petitioner could not perform his past relevant work.  AR 20-21.

But at step five—considering Petitioner's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that Petitioner could perform, including work as a weight tester, order clerk, or sorter and inspector.  AR 21-22.

## DISCUSSION

Petitioner contends that the ALJ committed four errors.  First, Petitioner contends that the ALJ improperly rejected Petitioner's subjective symptom testimony without offering clear and convincing reasons for doing so.  Pet.'s Open. Br. 6-12, Dkt. 14. Second, Petitioner argues that the ALJ improperly discounted lay witness testimony without offering a germane reason for doing so.  *Id.* at 12-13.  Third, Petitioner asserts that the ALJ improperly rejected medical opinions under the "supportability" and "consistency" standard.  *Id.* at 13-16.  Finally, Petitioner contends that the ALJ erred in the RFC finding due to a lack of support in the record.  *Id.* at 16-17.

As explained below, the Court finds that the ALJ's decision is free from reversible legal error.  First, the ALJ's rejection of Petitioner's subjective symptom testimony was supported by substantial evidence.  Second, because the ALJ provided clear and convincing reasons in rejecting Petitioner's subjective complaints, and Petitioner's wife's

testimony was similar to such complaint, the ALJ gave germane reasons for rejecting the lay witness testimony.  Even if the ALJ failed to offer germane reasons for discounting the lay witness testimony, the ALJ's failure to comment on the reasoning for discounting the testimony is harmless because the failure to comment was inconsequential to the ultimate nondisability determination.  Third, the ALJ did not err in evaluating the persuasiveness of the medical record as a whole.  Finally, the ALJ did not err in determining Petitioner's RFC because Petitioner's capability of performing a reduced range of sedentary work is supported by the record.  Accordingly, as more fully explained below, the Court will affirm the Commissioner's decision in denying Petitioner's claim.

## I.       Subjective Symptom Testimony

### A.       *Legal Standards*

The ALJ is responsible for evaluating symptom testimony.  SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017).  There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptoms, but only to show that it could reasonably have caused some degree of symptoms.  *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms.  *Id.*  The ALJ can reject the claimant's testimony "only by offering specific,

clear, and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that she does not credit and must explain what evidence undermines the testimony. *Holohan*, 246 F.3d at 1208. General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Id.* To discredit a Petitioner's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). On review, an ALJ's findings must be "properly supported by the record," and "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding [symptoms]." *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc).

   B.    *Analysis*

   At the hearing before the ALJ, Petitioner testified that he stopped working on the alleged onset date because he felt "unsafe" handling tools and did not want to hurt himself or his coworker by mishandling power tools. AR 37. He indicated that he had not looked for other work after resigning from his carpentry job because he needed to focus on medical treatment and to have multiple surgeries. *Id.* He indicated that, while he was not working and focusing on his medical treatment, he could only sit for about an hour before having to stretch and move around due to his soreness and discomfort. He estimated that he could stand and walk for about 30 minutes before he begins to feel pain. *Id.* Further, he testified that he does not typically stand and manages the pain by lying or

**MEMORANDUM DECISION AND ORDER - 8**

sitting down.  *Id.*  He estimated that he could lift approximately 25 pounds.  AR 40.  He testified spending most of the day with his children and maintaining household tasks.  AR 42-43.  He testified that he assisted his children with schoolwork and attended their soccer games.  *Id.*  However, he also indicated that he did not attend their school functions or soccer practices.  AR 43.  He testified that his household tasks include cooking and cleaning, but not both.  *Id.*  His rheumatoid arthritis affects his hands and his overall ability to handle and finger for extended amounts of time.  AR 36.  He indicated that he could peel a potato or cut an onion but was probably unable to sustain doing that for more than ten minutes due to the strain in his hands.  AR 45.  He also testified about the difficulty he incurs when helping clean the dishes after cooking due to the toll it takes on his hands.  AR 43.  He also testified about his medication, physical therapy, and past surgeries.  AR 38-40.  He indicated that the back surgery helped with the pain in his left leg but not in his lower back.  AR 39.  He also testified that his hip replacement surgery had been postponed due to the COVID-19 pandemic.  *Id.*

At the first step, the ALJ determined that Petitioner's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  AR 19.  However, in applying the second step, the ALJ concluded that Petitioner's testimony about "the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record."  *Id.*

Petitioner asserts that the ALJ erred in rejecting Petitioner's testimony because the ALJ failed to articulate specific, clear, and convincing findings in doing so.  Pet.'s Open. Br. 6.  Specifically, Petitioner contends that the ALJ did not provide clear and convincing

evidence to show that the symptoms and limitations that Petitioner testified to do not exist. *Id.* The Court is unconvinced and instead finds that the ALJ provided sufficient reasons, based on substantial evidence, for rejecting Petitioner's testimony.

First, there was substantial evidence in the record that Petitioner had shown improvement in his symptoms after treatment and medication, which the ALJ was entitled to rely on to discount Petitioner's subjective complaints. *See* 20 C.F.R. § 416.929(c)(3)(iv)-(v) ("An ALJ may discount a claimant's subjective complaints if the record shows effective treatment.") More broadly, "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).

Here, Petitioner has multiple diagnoses concerning his pain complaints, including rheumatoid arthritis, degenerative disc disease of the lumbar spine, status-post fusion, and degenerative joint disease of the bilateral hip. AR 19 (citing AR 372-373). Contrary to Petitioner's hearing testimony, the medical records show that Plaintiff had reported on multiple occasions to various medical providers that his medications, such as Xeljanz and Rituxan, were helpful in alleviating his pain. AR 457, 773, 1098, 1104-05. Further, both the medical records and Plaintiff's testimony demonstrate that back surgery was helpful in alleviating pain and aiding in ambulating without assistance. AR 38, 537-38, 1149-50. The Court is mindful that "[r]eports of 'improvement'" must be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (citing *Hutsell v.*

*Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)).  But when considering the record as a whole, there was substantial evidence that Petitioner's treatment was having some effect, and the ALJ was entitled to rely on this evidence to discount Petitioner's subjective symptom testimony.

There was also substantial evidence that Plaintiff's symptom allegations were inconsistent with the objective evidence in the record.  An ALJ may discount a claimant's subjective symptom testimony that is contradicted by medical evidence.  *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).  Although Plaintiff testified that he stopped working due to his impairments, the ALJ found that the objective medical evidence did not suggest the severity of the symptoms that Petitioner alleged. AR 20-21.  In reference to the alleged hand and wrist pain, the ALJ noted that diagnostic imaging showed mild degenerative changes at most.  AR 36, 411-12.  A March 2018 X-ray image of Petitioner's left hand showed "minimal left-hand wrist and hand arthritic changes."  AR 411.  The X-ray image of Petitioner's right hand showed "mild arthritic change."  AR 412.  Thus, when considering the record as a whole, there was substantial evidence that Petitioner's pain allegations were inconsistent with the objective medical evidence and diagnostic imaging, and the ALJ was entitled to rely on this evidence to discount Petitioner's subjective symptom testimony.

There was also substantial evidence that Petitioner's alleged limitations were inconsistent with the objective evidence of reported activities in the record.  "The mere fact that a plaintiff has carried on certain daily activities ... does not in any way detract from her credibility as to her overall disability."  *Vertigan v. Halter*, 260 F.3d 1044, 1050

**MEMORANDUM DECISION AND ORDER - 11**

(9th Cir.2001).  However, an ALJ may discount a claimant's subjective symptom testimony that (1) contradicts his other testimony and (2) meets the threshold for transferable work skills.  *Orn*, 495 F.3d at 639.  Although the Social Security Administration does not require claimants to "be utterly incapacitated to be eligible for benefits, daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Fair v. Bowen*, 885 F.2d 597, 603 (1989) (emphasis omitted) (emphasis omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (stating that adverse credibility finding based on activities may be proper "if a claimant engages in numerous daily activities involving skills that could be transferred to the workplace").  "More realistically, if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working." *Fair*, 885 F.2d at 603.

Here, there is substantial evidence to support the ALJ's conclusion that Petitioner's admitted daily activities were "transferable" to a work setting and proof that Petitioner spent a "substantial" part of his day engaged in transferable skills.  *See Fair*, 885 F.2d at 603.  The ALJ must make "specific findings relating to [the daily] activities" and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination.  *Burch*, 400 F.3d at 681.  In his function report, Petitioner reported being limited in his ability to stand on his feet and move all day.  AR 301.  He

also articulated that his daily activities include reading, watching television, listening to music, helping his children with schoolwork, caring and feeding his dog, cleaning, doing small household repairs, and running errands.  AR 302-03.  He reported grocery shopping one to two times per week and watching his children's sports practices and school activities one to two times per week.  Petitioner can take care of his own personal care with limitations in his ability to finger buttons due to pain.  AR 302.  Given Petitioner's reported daily activities, there was substantial evidence to support the ALJ's finding that Petitioner can engage in "sedentary work."  Sedentary work involves sitting throughout the workday with normal breaks, standing for about 2 hours of the workday, occasionally lifting or carrying 10 pounds, and frequently handling or fingering.  AR 18.  Though Petitioner alleges pain, he reports performing household chores and other activities that involve many of the same physical tasks as a weight tester, order clerk, or sorter and inspector.  Thus, when considering the record as a whole, there was substantial evidence that Petitioner's daily activities were "transferable" to a sedentary work setting, and the ALJ was entitled to rely on this evidence to discount Petitioner's subjective symptom testimony.

Even if other reasonable explanations outside of the ALJ's conclusion exist, the ALJ's interpretation is supported by substantial evidence available in the record.  When the ALJ's interpretation of the evidence is reasonable and supported by substantial evidence, the reviewing court should not relitigate it, even if other reasonable interpretations exist.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  Here, although Petitioner offers an alternative interpretation of other objective medical opinions

**MEMORANDUM DECISION AND ORDER - 13**

available in the record, the ALJ's interpretation is well-supported by the evidence

mentioned above. Therefore, the Court will affirm the ALJ's conclusion that the

Petitioner's symptom testimony is inconsistent with the medical evidence.

## II.    Lay Witness Testimony

### A.    *Legal Standards*

"In determining whether a claimant is disabled, an ALJ must consider lay witness

testimony concerning a claimant's ability to work." *Stout v. Comm'r of Soc. Sec. Admin.*,

454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th

Cir.1993)); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e)); *see also Molina v.*

*Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).  Lay testimony is competent evidence and

cannot be disregarded without comment. *See Diedrich v. Berryhill*, 874 F.3d 634, 640

(9th Cir. 2017); *Molina*, 674 F.3d at 1114; *Stout*, 454 F.3d at 1053 (citing *Nguyen v.*

*Chater*, 100 F.3d 1462, 1467 (9th Cir.1996)).  To discount lay witness testimony, the ALJ

must give reasons germane to each witness. *See Leon v. Berryhill*, 880 F.3d 1041, 1046

(9th Cir. 2018) (as amended); *Diedrich*, 874 F.3d at 640; *Dale v. Colvin*, 823 F.3d 941,

943 (9th Cir. 2016) (nurse practitioner testimony); *Britton v. Colvin*, 787 F.3d 1011, 1013

(9th Cir. 2015) (per curiam); *Molina*, 674 F.3d at 1114; *Bruce*, 557 F.3d at 1115;

*Carmickle*, 533 F.3d at 1164 (concluding ALJ had proper basis to reject lay witness

testimony); *Stout*, 454 F.3d at 1053; *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)

("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must

take into account, unless he or she expressly determines to disregard such testimony and

gives reasons germane to each witness for doing so." (citations omitted)).  The court has

not, "however, required the ALJ to discuss every witness's testimony on an individualized, witness-by-witness basis.  Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114 (determining the ALJ erred where she gave reasons for rejecting claimant's testimony, but failed to provide a reason for disregarding the lay witness testimony either individually or in the aggregate, and holding that the error was harmless).

      B.    *Analysis*

Petitioner contends that, because the ALJ did not explicitly reject the lay witness testimony for inconsistency with Petitioner's testimony, the ALJ discounted lay witness statements without providing a germane reason for doing so.  Pet.'s Reply Br. 4, Dkt. 18. Further, Petitioner argues that the ALJ's decision to discount the lay witness testimony based on the persuasiveness of the medical evidence is not a germane reason.  *Id.*  The Court disagrees.

Although lay witness testimony cannot be discounted without comment, an ALJ can discount such testimony when he or she "provide[s] clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and [when] [the lay witness's] testimony [is] similar to such complaints," thereby offering a germane reason for rejecting such testimony.  *Valentine v. Comm'r Soc. Sec. Admin*, 574 F.3d 685, 690 (9th Cir. 2009).  Here, the lay witness testimony of Petitioner's wife, like Petitioner's subjective symptom testimony, was inconsistent with the medical record.  Petitioner's wife completed a third-party function report, describing the severity of Petitioner's

**MEMORANDUM DECISION AND ORDER - 15**

impairments. AR 293-300.  Like in *Valentine*, the lay witness statements in the functional report are similar to Petitioner's subjective complaints.

First, Petitioner's wife also testified that his hands and wrists begin to hurt if he uses them more than a few minutes, he has difficulty fastening buttons, and he has difficulty walking, sitting, and standing. AR 293-85, 301-06.  However, as discussed above, the medical evidence showing that Petitioner's joint and back pain improved with treatment undermines these statements. AR 1104-05, 1149-50.  Second, Petitioner's wife also reported that Petitioner reads, watches television, cleans, feeds and cares for the dog, helps their children with schoolwork, attends their children's school activities and sports games and practices, and grocery shops.  AR 294-96.  However, as discussed above, Petitioner's reported daily activities demonstrate "transferable" skills to a sedentary work setting.

The ALJ did not expressly mention or discuss the reason for discounting the third-party statement by Petitioner's wife. Instead, the ALJ determined that:

> [H]er allegations are consistent with those of the claimant. However, the undersigned finds that the objective medical record is more persuasive in determining the residual functional capacity.

AR 19.

Petitioner asserts that the ALJ erred in discounting the third-party statements, because the ALJ may not dismiss third-party statements simply because the ALJ has concluded that Petitioner was not credible.  Pet.'s Open. Br. 13.  Further, Petitioner argues that the lay witness testimony offers substantial value because lay witnesses can "make independent observations of claimant's pain and other symptoms."  *Id.*; *see also*

**MEMORANDUM DECISION AND ORDER - 16**

*Dodrill*, 12 F.3d at 919.  The Court is unpersuaded.  Contrary to Plaintiff's assertion, the ALJ provided substantial evidence for discounting Petitioner's subjective symptom testimony.  Thus, the ALJ need only point to those reasons when rejecting similar testimony by a different witness.  *Id.*  Here, the ALJ properly discounted the third-party statements in pointing to the persuasiveness of the medical opinion, the same reason used in rejecting Petitioner's testimony.

Even if the ALJ failed to offer germane reasons for discrediting the lay witness testimony provided by Petitioner's wife, an ALJ's failure to comment on the reason for discounting the testimony is harmless. Such error is harmless when the "same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims," and the ALJ had "validly rejected all the limitations described by the lay witness."  *Molina*, 674 F.3d at 1115.  Ultimately, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Here, even if the ALJ failed to properly discuss the lay witness statements of Petitioner's wife, any error is harmless because any limitation described in the function report submitted by Petitioner's wife would have been validly rejected.  The ALJ determined that the objective medical evidence, including alleviating treatment, diagnostic imaging, and Petitioner's admitted daily activities, were more persuasive than Petitioner's subjective testimony concerning the intensity and severity of his symptoms.

**MEMORANDUM DECISION AND ORDER - 17**

Thus, because the pain and limitation allegations made by Petitioner's wife were consistent with those of Petitioner, the objective medical record would also be more persuasive than the third-party statements. Further, as discussed above, all the limitations reasonably supported by the lay witness testimony appeared in the ALJ's RFC finding.

## III.   Medical Opinion Evidence

### A.   Legal Standards

For claims filed on or after March 27, 2017, the revised regulations apply. *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*"Revisions to Rules"*), 2017 WL 168819, 82 Fed. Reg. 5844-01, at *5867-68 (Jan. 18, 2017). Under the new regulations, the ALJ is no longer required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider all the medical opinions in the record and evaluate each medial opinion's persuasiveness using factors. *Id.* The two most important factors in determining a medical opinion's persuasiveness are the opinion's "supportability" and "consistency." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must articulate "how [he or she] considered the supportability and consistency of factors for a medical source's medical opinions… in [his or her] decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2).

With regard to supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions… will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). As to consistency, the "more consistent a medical

**MEMORANDUM DECISION AND ORDER - 18**

opinion(s) is with the evidence from other medical sources in the claim, the more persuasive the medical opinion(s)… will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  The ALJ is not required to explain how she considered other factors, unless the ALJ finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical.  *See* 20 C.F.R. §§ 404.1520c(b)(3), 416.1520c(b)(3).  Moreover, in reviewing the ALJ's decision, the Court must consider whether the ALJ's analysis has the support of substantial evidence.  *See* 42 U.S.C. § 405(j); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).

Even if there is some error, the Court "may not reverse an ALJ's decision on account of an error that is harmless."  *Molina*, 674 F.3d at 1111.  An error is harmless when it is inconsequential to the ultimate non-disability decisions.  *Stout*, 454 F.3d at 1055.  In other words, "an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'" *Molina*, 674 F.3d at 1115 (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).  Courts look to the record as a whole to determine whether an error alters the outcome of a case.  *Molina*, 674 F.3d at 1115.  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Stout*, 454 F.3d at 1055 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

B.    Analysis

State agency medical consultant, Dr. Leslie E. Arnold, performed a medical evaluation of Petitioner for the DIB claim at the reconsideration level in November 2018.

**MEMORANDUM DECISION AND ORDER - 19**

AR 78-92.  In the evaluation, Dr. Arnold observed that, "although [Petitioner's] impairments are expected to cause some limitations[,] the severity alleged is only partially consistent [with] objective findings."  AR 86.  Dr. Arnold articulated Petitioner's "exertional limitations" based on Petitioner's rheumatoid arthritis, obesity, lumbar radiculopathy, and hip pain.  AR 86-87.  Specifically, Dr. Arnold anticipated that Petitioner would be able to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for about 6 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday.  *Id.*

Dr. Arnold also articulated Petitioner's "manipulative limitations" based on Petitioner's rheumatoid arthritis, obesity, lumbar radiculopathy, and hip pain.  AR 87-88.  Specifically, Dr. Arnold anticipated that Petitioner would be able to reach in any direction without limitation, handle without limitation, and finger frequently.  *Id.*  Consistent with these findings, Dr. Arnold determined that Petitioner demonstrated the capability to complete "a wide range of light physical work activities."  AR 90-91.  The ALJ found Dr. Arnold's opinion "somewhat persuasive as it was somewhat consistent with the record and supported."  AR 21.  Although the ALJ discounted Dr. Arnold's determination of Petitioner's ability to stand for 6 hours as his back and hip problems progressed since 2018, the ALJ determined that the record as a whole supported chronic pain with exertion, as consistent with a range of sedentary work described in the RFC finding.  *Id.*

Petitioner asserts that the ALJ erred in finding Dr. Arnold's opinion somewhat persuasive.  Pet.'s Open. Br.  13-16.  Specifically, Petitioner contends that there is no

medical opinion on the record that supports the ALJ's RFC finding, and the ALJ substituted her own layperson opinion in supporting the RFC finding.  Further, Petitioner argues that, although the revised agency regulations apply to Petitioner's claims, the ALJ failed to consider all relevant evidence in the record as required by Ninth Circuit precedent.  Pet.'s Reply Br. 5; *see also Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).  However, contrary to Petitioner's assertion, the new rules eliminate any hierarchical ranking of medical opinions and do not assign deference to any medical opinions.  20 C.F.R § 404.1520c(a) (2017).  Thus, in this case, the ALJ properly applied the new regulations in evaluating the medical opinions and was not required to give more weight to any particular medical opinion.

Because the ALJ was not required to assign hierarchical deference to certain medical opinions under the new regulations, the ALJ properly evaluated whether Dr. Arnold's medical opinion was persuasive.  "The new regulations still require the ALJ to explain her reasoning for discounting a medical opinion from a treating or examining physician to allow for meaningful judicial review."  *Robert S. v. Saul*, 3:19-CV-0177-SB, 2021 WL 1214518, at *4 (D. OR. Mar. 3, 2021), *report and recommendation adopted*, 3:19-CV-00173-SB, 2021 WL 1206576 (D. Or. Mar. 29, 2021) (citing 20 C.F.R. §§ 404.1520c(a)).  Here, the ALJ found Dr. Arnold's opinion only somewhat persuasive.  AR 21.  The ALJ discounted Dr. Arnold's functional limitations for Petitioner's ability to stand for 6 hours during the workday.  *Id.*  In discounting this finding, the ALJ explained that Petitioner's back and hip pain had become more pronounced since Dr. Arnold's assessment, concluding that the record as a whole evidenced Petitioner's chronic pain

**MEMORANDUM DECISION AND ORDER - 21**

with exertion.  *Id.*  Thus, the ALJ properly explained her reasoning for discounting some aspects of Dr. Arnold's opinion.

Here, although the ALJ found Dr. Arnold's opinion "somewhat persuasive and consistent" with the record, the ALJ was entitled to discount Dr. Arnold's limitation determination because the new regulations did not require the ALJ to defer to any medical opinion in calculating Petitioner's RFC.  Specifically, Dr. Arnold's medical opinion does not outline any functional limitations that contradict the ALJ's ultimate conclusion.  "An ALJ's RFC finding need only be consistent with relevant assessed limitations and not identical to them."  *Mendoza v. Kijakazi*, 1:19-CV-1371-HBK WL 715096, at *4 (E.D. Cal. Mar. 10, 2022) (citing *Turner v. Comm'r Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010).  First, the ALJ's computation of Petitioner's RFC is consistent with the medical record as a whole.  The ALJ determined that Petitioner had an RFC to perform "sedentary work" with multiple physical limitations, including Petitioner's ability to lift, carry, sit, stand, walk, climb, handle, and finger.  AR 18.  Although Dr. Arnold opined that Petitioner has some physical capabilities rendering Petitioner able to complete "light work," the ALJ adjusted such capabilities and listed limitations that are appropriately reflected and incorporated in Petitioner's RFC considering Petitioner's subjective testimony about his ability to stand for prolonged periods of time and the worsening pronouncement of his hips and back.  *Compare* AR 86-88, *with* AR 18, 21.

Second, the ALJ's step five finding did not contradict any medical opinion found in the record.  There is no evidence in the record of functional limitations other than

Petitioner's subjective symptom testimony and Dr. Arnold's evaluation.  Even though Petitioner contends that the ALJ was "playing doctor" in translating Petitioner's symptoms and medical records to an RFC of "sedentary work," the ALJ was computing the only recorded limitations to an RFC that is consistent with the record as a whole.  *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, available at 1996 WL 374183, at *5.

Contrary to Petitioner's argument, the claimant has the burden of establishing functional limitations and proving he was disabled.  *Valentine*, 574 F.3d at 689.  "The ALJ is responsible for studying the record and resolving any conflicts or ambiguities in it."  *Diedrich v. Berryhill*, 874 F.3d 634, 638 (9th Cir. 2017).  Further, the ALJ is only required to develop the record "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001).  Here, the ALJ was required to utilize the whole record, not only the medical opinions, in formulating Petitioner's RFC.  Additionally, Petitioner has not argued that the record was inadequate for proper evaluation of the evidence without another medical opinion, nor pointed to other medical opinions or evidence in the record that contradict the ALJ's ultimate conclusion.

In performing step five of the sequential disability determination, the ALJ concluded that Petitioner could perform jobs with an unskilled sedentary base within Petitioner's RFC, including work as a weight tester, order clerk, and sorter and inspector, based on the ALJ's translation of the medical records in a succinct RFC.  AR 21, 23; *see also Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).  Thus, because the only limitations available in the record are those outlined in Dr. Arnold's

opinion, and those limitations exceed the ALJ's ultimate conclusion—including Petitioner's RFC and ability to other jobs in the national economy based on that RFC— the Court finds the ALJ properly evaluated the persuasiveness of Dr. Arnold's medical opinion.

## IV.    Residual Functional Capacity Finding

### A.    *Legal Standard*

The RFC is the most a person can do despite his physical or mental impairments. *See* 20 C.F.R. § 404.1545.  "The ALJ assesses a claimant's RFC based on all the relevant evidence in [the] case record."  *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (quotations and citations omitted).  In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony.  20 C.F.R. § 404.1545; *see also* Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184.  In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174-75 (9th Cir. 2008) (affirming the ALJ's translation of moderate functional limitations into the claimant's RFC).  "Only limitations supported by substantial evidence must be incorporated into the RFC, and, by extension, the dispositive hypothetical question posed to the VE."  *Kimberley A. v. Kijakazi*, No. 2:20-CV-01802-SB WL 19203, at *5 (D. Or. Jan. 3, 2022) (citations omitted).

In determining a claimant's RFC, an ALJ must assess all the evidence, such as the claimant's and others' descriptions of limitation, and medical reports, to determine what capacity the claimant has for work despite his or her impairment(s). *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017). The ALJ considers a claimant's ability to meet physical and mental demands, sensory requirements, and other functions. *See* 20 C.F.R. §§ 404.1545(b)–(d), 416.945(b)–(d).

B.      Analysis

At the hearing before the ALJ, the ALJ asked the vocational expert ("VE") several hypothetical questions involving an individual with the same age, education, work experience, and RFC as Petitioner. AR 47-51. The VE responded that, within the hypothetical framework that the ALJ imposed, someone with those characteristics would be unable to perform Petitioner's past relevant work but could perform three jobs in the sedentary work range in the national economy. AR 48-50

Petitioner cites to *Embrey v. Bowen*, 849 F.2d 418 (9th Cir. 1988), for the proposition that the ALJ failed to pose hypothetical questions to the VE that encompassed all Petitioner's limitations because the ALJ (1) improperly discredited Petitioner's subjective symptom testimony, (2) improperly discredited the third-party statements of Petitioner's wife, and (3) ignored relevant medical opinion evidence. Pet.'s Open. Br. 16-17. In *Embrey*, the Ninth Circuit held that, if an ALJ's hypothetical to a VE is unsupported by the record and does not reflect all a claimant's limitations, the VE's opinion has no evidentiary value and cannot support the ALJ's decision. *Id.* at 243. That is not the case here.

**MEMORANDUM DECISION AND ORDER - 25**

In this case, the ALJ's hypothetical questions to the VE were both supported by the record and reflected all Petitioner's limitations.  As recounted above, the ALJ's reasons for discrediting Petitioner's subjective symptom testimony and third-party statements by Petitioner's wife did not constitute legal error and were supported by substantial evidence.  Additionally, the ALJ's assessment of medical opinions was proper.

Further, although Petitioner argues that the medical "record supports Petitioner's testimony that he constantly feels pain in his hips, low back, and hands," Pet.'s Open. Br. 17, "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds*, 807 F.3d at 1006.  A plaintiff's RFC is not a medical issue dependent on a physician's opinion, but rather, an administrative finding based on evidence available in the entire record.  20 C.F.R. § 404.1546(c); SSR 96-5p, available at 1996 WL 374183, at *5.  When determining an RFC, the ALJ can utilize a wide range of evidence available in the record, including reports of daily activities, lay evidence, medical source statements, the effects of treatment, recorded observations, and other evidence.  SSR 96-8p, available at 1996 WL 374814, at *5.

Therefore, Petitioner's contention, more narrowly, is whether the ALJ adequately accounted for Petitioner's limitations in the RFC.  *See Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).  Here, as noted above, the ALJ referenced treatment records, Petitioner's improvement with treatment, and statements from Dr. Arnold that he was capable of light work.  AR 18-19.  Ultimately, the ALJ had sufficient evidence to determine Petitioner's limitations and ability to perform sedentary work.

**MEMORANDUM DECISION AND ORDER - 26**

In sum, the ALJ's description of Petitioner's impairments to the VE fully and accurately encompassed all of Petitioner's limitations, and the VE's testimony regarding which occupations Petitioner can perform has supportive evidentiary value.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court will affirm the Commissioner's decision.

## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, it is hereby **ORDERED** that the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the petition for review is **DISMISSED**.

DATED: June 23, 2022

Honorable Candy W. Dale
United States Magistrate Judge